**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DANIEL SCOTT, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. H-07-3484 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM AND ORDER**

Pending before the Court are Plaintiff Daniel Scott's ("Scott") and Defendant Michael J. Astrue's, Commissioner of the Social Security Administration (the "Commissioner"), cross-motions for summary judgment. Scott appeals the determination of an Administrative Law Judge ("the ALJ") that he is not entitled to receive Title XVI supplemental security income ("SSI") benefits. *See* 42 U.S.C. §§ 416(i), 423, 1382c(a)(3)(A). Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, it is ordered that Scott's Motion for Summary Judgment (Docket Entry No. 8) is granted, the Commissioner's Motion for Summary Judgment (Docket Entry No. 11) is denied, and the Commissioner's decision denying disability income benefits is reversed and remanded.

**I.**    ***Background***

On August 12, 2005, Scott filed an application for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability beginning on June 1, 2005, as a result of hypertension and leg edema. (R. 81-86). After being denied benefits initially and on reconsideration,

on March 7, 2008, Scott requested an administrative hearing before an ALJ to review the decision. (R. 38, 52).

A hearing was held on August 14, 2006, in Houston, Texas, at which time the ALJ heard testimony from Scott as well as Carolyne B. Fisher, a vocational expert ("VE"). (R. 170). In a decision dated October 5, 2006, the ALJ denied Scott's application for benefits, finding he was not disabled because he did not have a severe impairment. (R. 29-33).

On October 17, 2006, Scott requested review of the ALJ's decision by the Appeals Council of the SSA's Office of Hearings and Appeals. (R. 20). Scott submitted additional evidence to the Appeals Council on November 20, 2006, which consisted of a psychological report from Ted Jolly, a psychologist, dated October 19, 2006. (R. 18-19, 21-25). Scott also submitted a written argument on April 26, 2007. (R. 16-17, 164-166). On June 26, 2007, the Appeals Council denied Scott's request to review the ALJ's decision. (R.11-15). On July 10, 2007, Scott requested that the Appeals Council reconsider its decision to deny review. (R. 167). The Appeals Council set aside its June 26, 2007, decision, considered Scott's additional evidence and, again, denied Scott's request to review the ALJ's determination on August 17, 2007. (R. 6-9). This rendered the ALJ's opinion the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Scott filed this case on October 10, 2007, seeking judicial review of the Commissioner's denial of his claim of benefits. *See* Docket Entry No. 1.

**II.**     <u>*Analysis*</u>

    **A.**     <u>*Statutory Bases for Benefits*</u>

SSI benefits are authorized by Title XVI of the Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, § 2100 (14th ed. 2001). The

2

SSI Program is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. *See* 20 C.F.R. § 416.110.  Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled. *See Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *see also* 20 C.F.R. § 416.335.  The applicable regulation provides:

> When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.  If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.

20 C.F.R. § 416.335.  Thus, the month following an application, here, September 2005, fixes the earliest date from which benefits can be paid.  Eligibility for SSI payments, however, is not dependent on insured status. *See* 42 U.S.C. § 1382(a).

Applicants seeking benefits must prove "disability" within the meaning of the Act, which defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A).

3

**B.**     *Standard of Review*

    **1.**     *Summary Judgment*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case.  If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991).  When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000).  If there are no issues of material fact, the court shall review any questions of law *de novo*. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n  of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

### 2.    *Administrative Determination*

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Masterson*, 309 F.3d at 272; *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citations omitted). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve. *Id*.

### C.    *ALJ's Determination*

An ALJ must engage in a five-step sequential inquiry to determine whether the claimant is capable of performing "substantial gainful activity," or is, in fact, disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings. *See* 20 C.F.R. § 416.920(b).

2.      An individual who does not have a "severe impairment" will not be found to be disabled. *See* 20 C.F.R. § 416.920(c).

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors. *See* 20 C.F.R. § 416.920(d).

4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made. *See* 20 C.F.R. § 416.920(e).

5.      If an individual's impairment precludes performance of his past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed. *See* 20 C.F.R. § 416.920(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *accord Boyd*, 239 F.3d at 704-05. The claimant has the burden to prove disability under the first four steps. *See Myers*, 238 F.3d at 619. If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *See Masterson*, 309 F.3d at 272; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). If the Commissioner is able to verify that other work exists in significant numbers in the national economy that the claimant can perform in spite of his existing impairments, the burden shifts back to the claimant to prove that he cannot, in fact, perform the alternate work suggested. *See Boyd*, 239 F.3d at 705. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See id*.

The mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). An individual claiming disability benefits under the Act has the burden to prove that he suffers from a disability as defined by the Act. *See Newton*, 209

F.3d at 452; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  A claimant is deemed disabled under the Act only if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *accord Newton*, 209 F.3d at 452; *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); *Selders*, 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" is defined as work activity involving significant physical or mental abilities for pay or profit.  *See Newton*, 209 F.3d at 452-53; *see also* 20 C.F.R. § 404.1572(a)-(b).

A medically determinable "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also* 42 U.S.C. § 423(d)(3).  "[A]n individual is 'under a disability, only if the impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'"  *Greenspan*, 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)).  This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if he applied.  *See Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first two steps, the ALJ determined:

1.   The claimant has not engaged in substantial gainful activity since June 1, 2005, the alleged onset date (20 C.F.R. §§ 416.920(b) and 416.971 *et seq.*).

2.   The claimant has the following medically determinable impairments: hypertension and leg edema (20 C.F.R. § 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 C.F.R. § 416.921).

4.   The claimant has not been under a "disability," as defined in the Social Security Act, since July 12, 2005 (20 C.F.R. § 416.920(c)), the date the application was filed.

(R. 31-33).  Because the ALJ found that Scott does not have a severe impairment, his analysis was terminated at step two of the sequential evaluation process.

This Court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 215; *Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452; *Greenspan*, 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3).  To determine whether the decision to deny Scott's claim for disability benefits is supported by substantial evidence, the court weighs the following four factors:  (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) the plaintiff's age, educational background, and work history.  *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.

1972)).  Any conflicts in the evidence are to be resolved by the ALJ and not the court.  *See Newton*, 209 F.3d at 452; *Brown*, 192 F.3d at 496; *Martinez*, 64 F.3d at 174; *Selders*, 914 F.2d at 617.

### D.   *Issues Presented*

Scott contends that the Commissioner's decision is not supported by substantial evidence. Specifically, Scott claims that the ALJ erred by failing to find his hypertension and leg edema to be severe impairments; failing to properly classify Scott as having a "marginal" education; failing to properly consider Scott's physical limitations; and failing to follow the Commissioner's own regulation dictating disability under his residual functional capacity—20 C.F.R. pt. 404, subpt. P, app. 2, table 3, rule 203.01.[1]  Scott further asserts that the Appeals Council erred by failing to adequately consider Scott's mental limitations, including: (1) whether Scott's mild mental retardation constitutes a severe impairment that is disabling; (2) whether Scott's cognitive limitations play a role in his failure to follow prescribed treatment, which, in turn, creates severe impairments of poorly controlled hypertension and/or leg edema; and (3) whether Scott's "marginal" sixth grade education, illiteracy, and mild mental retardation have an impact on his ability to obtain and maintain full time competitive employment.  *See* Docket Entry No. 8.

The Commissioner disagrees with Scott's claims, and asserts that Scott's additional evidence of mild mental retardation submitted to the Appeals Council did not demonstrate that he had a severe impairment that prevented him from performing basic work activities.  *See* Docket Entry No. 12.

---

[1] Rule 203.01 provides that a claimant who has a residual functioning capacity to perform medium work, is 60-62 years old, has a marginal education, and has an unskilled work history is disabled.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table 3, rule 203.01.

E.    *Review of the ALJ's Decision*

   1.    *Objective Medical Evidence and Opinions of Physicians*

When assessing a claim for disability benefits, "[i]n the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).  If the claimant is not actually working and his impairments match or are equivalent to one of the listed impairments, he is presumed to be disabled and qualifies for benefits without further inquiry.  *See id.* at 532; *see also* 20 C.F.R. § 404.1520(d).  When a claimant has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *see Zebley*, 493 U.S. at 536 n.16; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  The relevant regulations similarly provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see also Loza*, 219 F.3d at 393.  The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment.  *See Zebley*, 493 U.S. at 531.

The claimant has the burden to prove at step three that his impairment or combination of impairments matches or is equivalent to a listed impairment.  *See id.* at 530-31; *Selders*, 914 F.2d at

619.  The listings describe a variety of physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.  *See Zebley*, 493 U.S. at 529-30.  Individual impairments are defined in terms of several specific medical signs, symptoms, or laboratory test results. *See id.* at 530.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet *all* of the specified medical criteria.  *See id.*  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify.  *See id.*

For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.  *See id.* at 531 (citing 20 C.F.R. § 416.926(a)).  A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in severity and duration to the listed findings.  *See* 20 C.F.R. § 404.1526(a).  The applicable regulation further provides:

> (1)(i)   If you have an impairment that is described in the Listing of Impairments in Appendix 1 of Subpart P of this chapter, but—
>
> (A)      You do not exhibit one or more of the medical findings specified in the particular listing, or
>
> (B)      You exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing;
>
> (ii)      We will nevertheless find that your impairment is medically equivalent to that listing if you have other medical findings related to your impairment that are at least of equal medical significance.

20 C.F.R. § 404.1526(a).  Nonetheless, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531.

Ultimately, the question of equivalence is an issue reserved for the Commissioner.  *See Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993)

A review of the medical records submitted in connection with Scott's administrative hearing reveal that on June 29, 2005, at age 64, Scott was treated at Harris County Hospital District ("HCHD") for hypertension[2] and leg edema.[3]  (R.129-131).  Scott's blood pressure was recorded at 213/109, and swelling was observed in both ankles.  *Id.*  Scott reported that he had not seen a doctor in several years and was not taking any medication.  *Id.*  Scott was diagnosed with uncontrolled hypertension and leg edema.  *Id.*  He was prescribed blood pressure medication as well as a diuretic.  *Id.*

On August 11, 2005, Scott returned to HCHD for a follow-up appointment.  (R. 128).  His blood pressure was recorded as 172/93.  Notes indicated that Scott's hypertension was still uncontrolled.  *Id.*  Scott was referred for a series of examinations, including liver and lipid panels.  His medications also were refilled.. *Id.*

On September 20, 2005, Scott returned to HCHD for a follow-up appointment.  (R. 127).  At that time his blood pressure was reported at 190/100.  Scott indicated that he had run out of medication approximately one week prior.  *Id.*

On October 11, 2005, Scott underwent a consultative examination for disability determination at the Medical Testing and Examinations Center of Houston ("MEDTEX").  (R. 132-137).  The

---

[2]  "Hypertension" refers to high arterial blood pressure; various criteria for its threshold have been suggested, ranging from 140 mm Hg systolic and 90 mm Hg diastolic to as high as 200 mm Hg systolic and 110 mg Hg diastolic. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 858 (29th ed. 2000).

[3]  "Edema" refers to an accumulation of an excessive amount of watery fluid in cells or intercellular tissues. *See* STEDMAN'S MEDICAL DICTIONARY 566-567 (27th ed. 1999).

examiner, William R. Livesay, M.D. ("Dr. Livesay"), reported that Scott's "story and history is somewhat inconsistent and hesitant and it is difficult to know whether he simply does not understand the question before he answers." (R. 132). He noted Scott's chief problem as swelling in both legs starting in the ankles and extending up to the calf. *Id*. Scott advised Dr. Livesay that he had trouble getting his shoes on in the mornings, muscle cramps in his legs, and frontal headaches. *Id.*

Upon physical examination by Dr. Livesay, Scott's blood pressure was reported at 236/134. (R. 133). Scott's vision, neck, lungs, abdomen, back, pulses, skin, and neurological examinations were normal. (R. 133-134). Additionally, Dr. Livesay noted that Scott had normal heart sounds and rhythm, normal range of motion of all joints without pain, and no edema or obvious superficial varicosities present in his lower extremities. (R. 133). Dr. Livesay's impression about Scott's edema and hypertension was "[n]o evidence of swelling in the lower extremities at this time, but probably his complaint is related to venous insufficiency and stases edema which is controlled by the diuretic he is taking." (R. 134). He further concluded that Scott's hypertension vascular disease was poorly controlled, but no complications were evident. (R. 134).

Approximately one month later, on November 9, 2005, Scott underwent a Physical Residual Functional Capacity Assessment ("RFC") that was completed by a DDS physician, Wright James, M.D. ("Dr. James"). (R. 138-145). The primary diagnosis was uncontrolled hypertension with a secondary diagnosis of edema of the lower extremities. (R. 138). Dr. James opined that Scott had the RFC to occasionally lift and/or carry fifty (50) pounds, frequently lift and/or carry twenty-five (25) pounds, and push and/or pull unlimited, other than as shown for lift and/or carry. (R. 139). Additionally, Dr. James found that Scott would be able to stand and/or walk for a total of about six (6) hours in an 8-hour workday, and sit for a total of about six (6) hours in an 8-hour workday. *Id.*

According to Dr. James, Scott had no postural, manipulative, visual, communicative, or environmental limitations. (R. 140-142). Dr. James noted that Scott's alleged limitations are partially supported by the medical evidence of record and that Scott "obviously needs better control of his hypertension." (R. 143). Scott concluded, however, that "at present, there is no evidence of end organ damage" and Scott's edema was responding favorably to treatment. (R. 143).

On October 13, 2005, Scott returned to HCHD for a blood pressure check-up. (R. 156). Scott's blood pressure was reported as 144/79. *Id.* Approximately two months later, on December 27, 2005, Scott's blood pressure was recorded as 188/84. (R. 155). Treatment notes reflect that Scott had hypertension and was tobacco dependent. Scott's blood pressure medication and diuretic were continued. *Id.*

On March 1, 2006, Scott returned to HCHD for an appointment and his blood pressure was recorded as 171/66. (R. 154). Later that month, Scott returned to HCHD and his blood pressure was reported as 190/99. (R. 153).

The next month, April 2006, Scott returned to HCHD and his blood pressure was recorded as164/89. (R. 152). Treatment notes indicated that Scott's hypertension was uncontrolled. *Id.* Eight days later, Scott's blood pressure was reported as 150/80. Treatment notes indicated that Scott should take his medications as prescribed. (R. 151).

On May 2, 2006, Scott visited HCHD for a follow-up appointment. At that time, his blood pressure was reported as 161/90. (R. 150). Six days later, when Scott returned to HCHD, his blood pressure was recorded as 167/94; thus, his medication was altered. (R. 149). On May 23, 2006, Scott returned to HCHD for a follow-up appointment. (R. 148). At that time, his blood pressure was

reported as 116/68.  *Id*.  Scott was instructed to take all of his medications and to keep his

appointments.  *Id.*

On July 11, 2006, Scott visited HCHD for a follow-up appointment.  (R. 147).  Scott's blood

pressure was recorded as 133/67.

Two weeks after the ALJ issued his decision denying disability, Scott underwent a

psychological evaluation by psychologist Ted Jolly ("Jolly") and Tomas G. Soto, Ed. D., L.P.A. ("Dr.

Soto") on October 19, 2006.  (R. 21-25).  Scott's chief complaint was noted as follows:

> He suffers from high blood pressure.  He said "although at times I feel O.K., if I don't
> take my medication, my blood pressure goes up and [I] get dizzy and confused but I
> don't have the money to buy my medication."  In addition, both legs swell, are painful
> and [are] disabling to him.  He is unsure why he suffers from this condition.
> Furthermore, he is functionally illiterate.

(R. 21).  It was further noted that Scott was a sixty-five year old male who had failed to complete

seventh grade, had a history of unskilled employment, and did not have a drinking problem.  (R. 21-

22).  Scott's mental status examination revealed he following:

> Even though he attempted to readily comply with the demands of the evaluation, his
> performance was slow, inadequate and inconsistent.  At times, his attention wandered
> away from the task at hand and often required repetition of test instructions.  He was
> apologetic and said "at times, I'm thinking but I don't know what I'm thinking."
>
> * * *
>
> Mr. Scott was oriented as time and place but disoriented as space.  Memory for
> remote, recent, and immediate events was impaired.  He gave his birth date, [but] was
> unaware of the day's date.  He did not remember his SS#.  He failed three subtractions
> and he was unable to write the word "earth" backward.

(R. 22-23).  Scott's Full Scale I.Q. score was 64, classifying him in the mild level of mental

retardation.  (R. 23).  It was noted that Scott struggled when asked to define elementary verbal

concepts and he became easily confused.  *Id*.  Despite his limitations, Scott attempted to complete

15

assigned tasks on the examination, which contraindicated malingering.  (R. 24).   Scott's overall cognitive patterns indicated that, for all practical purposes, he is functionally illiterate and will be unable to read and comprehend elementary printed material.  *Id*.  Similarly, he was unable to write sentences and paragraphs without assistance.  His understanding of basic arithmetic computation was inadequate for independent commerce requiring understanding of elementary arithmetic computation techniques.  (R. 24).

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan*, 38 F.3d at 237; *accord Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The opinion of a specialist generally is accorded greater weight *than* that of a non-specialist.  *See Newton*, 209 F.3d at 455; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000).  Medical opinions are given deference, however, only if those opinions are shown to be more than conclusory and supported by clinical and laboratory findings.  *See Scott*, 770 F.2d at 485.  Moreover, a treating physician's opinions are far from conclusive and may be assigned little or no weight when good cause is shown.  *See Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Greenspan*, 38 F.3d at 237.

Good cause may permit an ALJ to discount the weight of a treating physician's opinion in favor of other experts when the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; *see also Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211.  It is well settled that even though the opinion and diagnosis of

a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status.  *See Paul*, 29 F.3d at 211; *accord Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 455.

### 2.   *ALJ's Decision at Step Two of the Sequential Evaluation Process*

At the second step in evaluation of disability, the ALJ must consider the medical severity of a complainant's impairments.  If a complainant does not have a severe medically determinable impairment, the complainant will be found not disabled.  *See* 20 C.F.R. § 416.920(a)(4)(ii).  In this Circuit, "[a]n impairment can be considered as *not severe* only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (emphasis added); *see also* 20 C.F.R. § 416.920(c)..

In the case at bar, the ALJ applied the correct standard of severity and found that Scott's hypertension and leg edema were nonsevere because they did not interfere with his ability to perform "basic work activities."  (R. 32).  Under Social Security Regulation SSR 85-28, "basic work activities" is defined as the abilities and aptitudes necessary to do most jobs.  *See* 20 C.F.R. § 416.921.  Examples of these include:

1.   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2.   Capacities for seeing, hearing, and speaking;

3.   Understanding, carrying out, and remembering simple instructions;

4.   Use of judgment;

5.      Responding appropriately to supervision, co-workers, and usual work situations; and

6.      Dealing with changes in a routine work setting.

*See id.*

Contrary to the ALJ's decision, the medical records and Scott's testimony at the administrative hearing reveal his hypertension and leg edema are more than "slight abnormalities" and, as such, would be expected to interfere with Scott's ability to perform basic work-related activities.  In this regard, Scott testified at the administrative hearing that he has swelling in his ankles and legs all of the time which makes it difficult for him to walk.  (R. 173, 176-177).  In addition to the leg swelling, Scott testified that he has muscle cramps in his legs about twice a day.  (R. 176-177).  He further indicated that he has difficulties bending, stooping and crawling.[4]  (R. 176).  Moreover, even DDS examiners Drs. Livesay and James noted in their respective reports that Scott's hypertension was poorly controlled.  (R. 134, 143).  Dr. James further found that he alleged limitations were at least partially supported by the medical record.  (R. 143).  To the extent the ALJ capitalizes on the fact that the last two treatment notes in the record indicated better control of Scott's hypertension, this does not negate the severity of the impairment or Scott's testimony regarding how it impacts him.

The ALJ chose not to ask Scott a single question at the administrative hearing.  (R. 178).  In what appears to be a predetermined one and one-half page decision, the ALJ takes Scott's testimony about mowing lawns out of context, implying he continued full-time work.  (R. 32).  Scott's actual testimony indicated that the lawn mowing was only occasional, earning him $25.  (R. 177-178).  Scott

---

[4] To the extent the Commissioner notes that in a Daily Activity Questionnaire dated August 2005, Scott did not complain of these same limitations, the Court takes judicial notice that the administrative hearing took place over a year after the form was completed and that the form was completed by his friend, Brenda Lytle. (R. 116).

acknowledged that some days he was just not able to do it. (R. 178).[5]  Additionally, although the ALJ remarks in his decision that the record fails to contain any opinions for treating physicians indicating the Scott is disabled or that he has any limitations and/or restrictions, it should be noted that, in large part, the HCHD treatment notes are of poor copy quality and illegible.  The Court cannot discern from the notes recorded complaints by Scott regarding pain, dizziness, medication side effects and/or restrictions or limitations advised to Scott.  Moreover, from a practical standpoint, it is doubtful that Scott was treated by the same physician at each visit to HCHD.   This lack of continuity would mitigate against finding a disability opinion in Scott's treatment notes.

In sum, the Court finds a lack of substantial evidence to support the ALJ's decision to exclude Scott's allegations of hypertension and leg edema as severe impairments.  Because the step two errors necessarily impact the three remaining steps of the sequential evaluation process, the Court does not consider Scott's remaining issues concerning those three steps.

### 3.    *Appeals Council's Review of Additional Evidence*

The Appeals Council received and reviewed as additional evidence the psychological evaluation of Dr. Soto and Jolly; however, determined that it did not change the ALJ's decision. (R. 6-9, 11-15).  As an initial matter, the report contains complaints related to Scott's hypertension and leg edema, including: swelling of lower extremities; uncontrolled hypertension at various times, resulting in dizziness and confusion. *Id*.  At a minimum, the report further exemplifies that the ALJ erred in finding Scott's hypertension and leg edema as nonsevere. Clearly, Scott suffering from

---

[5] This portion of the administrative record was transcribed inaccurately; however, Scott filed a disc with his motion, revealing the correct question, "Some days you're just not able to do it?"

swelling, dizziness, and confusion would significantly limit his ability to perform basic work-related activities.

Furthermore, as set forth above, the evaluation expressly demonstrates that Scott suffers from significant mental limitations, including: sixth-grade education; mild mental retardation; academic deficit below kindergarten level; unable to read; unable to perform math computations; never been able to drive; unable to afford medications; and unskilled work history. (R. 21-25). This information in and of itself warranted a remand to the ALJ for a determination whether Scott's mild mental retardation constitutes a severe impairment that is disabling; whether Scott's mental limitations impact his ability to properly follow a prescribed treatment plan, contributing to his severe impairments of hypertension and leg edema; and whether Scott's mental limitations have an impact on his ability to obtain and maintain full time competitive employment.  The Appeals Council erred in failing to do so.

### III.   *Conclusion*

Accordingly, it is therefore

**ORDERED** that Scott's Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED**. It is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Docket Entry No. 11) is **DENIED**.  It is finally

**ORDERED** that the Commissioner's decision denying Scott's disability benefits is **REVERSED** and **REMANDED**, pursuant to "sentence four" of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to the Commissioner for a new hearing to properly consider the severity of Scott's alleged medically determinable impairments, including on remand, Scott's mental limitations.

**SIGNED** at Houston, Texas on this 30th day of March, 2009.

Calvin Botley
United States Magistrate Judge